

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 0 3 2019

Fairhurst, CJ
CHIEF JUSTICE

This opinion was
filed for record
at 8 am on October 3, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 95542-5 |
| | ) | |
| Respondent, | ) | EN BANC |
| | ) | |
| v. | ) | Filed ___OCT 0 3 2019___ |
| | ) | |
| B.O.J., | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |

FAIRHURST, C.J.—In this moot case of substantial and continuing public interest, a juvenile offender challenges whether her need for treatment was an appropriate basis for imposing a manifest injustice disposition. We hold that it was not. We reverse the Court of Appeals' holding that B.O.J.'s need for treatment supported the trial court's finding that a standard range disposition would effectuate a manifest injustice.

Because the case is moot, we decline to reach B.O.J.'s claim that the State breached its plea agreement.

## I. FACTS AND PROCEDURAL HISTORY

B.O.J. had a difficult childhood and adolescence, having been born crack exposed. She was raised primarily by her grandmother, with intermittent contact with her father. In March 2014, she entered into a dependency guardianship with the former Department of Social and Health Services (DSHS).[1] Her grandmother died in 2016.

B.O.J. habitually ran away from her DSHS foster placements, as evidenced by 18 dependency contempt warrants issued from 2014 to 2016. During that same period she began to accrue a criminal history, consisting of the following gross misdemeanors: one count of attempted second degree taking of a motor vehicle, five counts of attempted third degree theft, two counts of false statement, two counts of fourth degree assault, and unlawful possession of alcohol by a minor. Also in that time, roughly 30 warrants were issued for violations of a court order and for failure to appear for mandatory court hearings.

On November 15, 2016, B.O.J. pleaded guilty to two counts of third degree theft for shoplifting from a Safeway. These offenses subjected her to a "'local sanctions'" standard sentence range, consisting of "one or more of the following": (1) 0-60 days of confinement, (2) 0-24 months of community supervision, (3) 0-300

---

[1] The newly created Department of Children, Youth, and Families took over child welfare duties that were formerly the responsibility of DSHS, effective July 1, 2018. RCW 43.216.906.

hours of community restitution, or (4) a fine of $0-$1,000. RCW 13.40.020(18), .0357, .180. In exchange for her plea, the prosecution promised to recommend 6 months of community supervision, 8 hours of community service, credit for time served, release at her sentencing disposition, and no contact with the victims. The plea agreement specified that the State's recommendation could "INCREASE IN SEVERITY" if B.O.J. "VIOLATE[D] CONDITIONS OF RELEASE." Clerk's Papers (CP) at 15.

B.O.J.'s disposition hearing occurred on December 13, 2016. The State contended that it was no longer bound by the plea agreement, asserting that B.O.J. had violated the conditions of her release by running away from placement. The State recommended a manifest injustice disposition of 27 to 36 weeks of confinement in a Juvenile Rehabilitation Administration (JRA) facility. The prosecutor stated that his recommendation was "based on [B.O.J.'s] inability to comply with community supervision terms" and "her rather extreme needs that have been untreated so far and cannot be treated in the community." Verbatim Report of Proceedings (VRP) (Dec. 13, 2016) at 20-21. He reasoned, "That amount of time will allow her at least one shot, if not two, at drug and alcohol treatment," a process that "takes at least 10 weeks" and often needs to be tried more than once by "youth who have been historically resistant to that treatment." *Id.* at 20.

3

B.O.J.'s juvenile probation counselor (JPC) submitted a report recommending 52 to 65 weeks of confinement at a JRA facility. The report detailed B.O.J.'s personal, criminal, mental health, and substance abuse histories. Attached to the report were roughly 80 pages of supplemental materials, including court records; DSHS records; a global appraisal of individual needs assessment from July 28, 2015; a urinalysis from November 19, 2016 testing positive for cannabinoids; school transcripts and disciplinary records; a mental health summary report from the Juvenile Justice Assessment Team of the King County Superior Court; and a pass from fall 2015 for inpatient drug and alcohol treatment at a facility in Spokane.

B.O.J.'s counsel recommended 60 days of confinement with a pass for inpatient treatment and 4 months of community supervision.

The court found (1) that the standard range "would not allow sufficient time for [B.O.J.] to complete the services she needs, nor would she engage with such services in the community;" (2) that the standard range "would be too lenient in light of [B.O.J.'s] uncharged criminal conduct, dismissed charges, and failures to comply with court orders;" and (3) that "[e]ither of these bases, standing alone, would be sufficient for the Court to impose" the manifest injustice disposition. CP at 41 (Findings of Fact & Conclusions of Law for Manifest Injustice Disposition (FFCL) paras. 20-24).

At the disposition hearing, the trial court orally stated its findings that both the need for treatment and the fact that the standard range would be too lenient supported the manifest injustice disposition. But immediately after stating its finding that the standard range was too lenient, the trial court continued, "And I guess—let me back up—not so much the seriousness of her adjudications, but the seriousness of the services that she needs in order to have success." VRP at 30. The court further elaborated that

> if I'm given two choices, one being her on the street and hoping for the best, and one being her in a place where she's stable and has access to treatment . . . at some point during that period of time, hopefully she realizes . . . that there are things out there that can help her. . . . [The] JRA in this state is not designed to warehouse people . . . it's designed to offer services in a place where you, [B.O.J.], weren't able to get them before.

*Id.* at 34-35. The trial court also found as a mitigating factor that B.O.J.'s conduct neither caused nor threatened serious bodily injury, RCW 13.40.150(3)(h)(i), but concluded that "the services that [B.O.J.] needs far outweigh—let me back up—the aggravating factors in this case far outweigh that mitigating factor, and still require a manifest injustice sentence." VRP at 36. The trial court imposed a manifest injustice disposition of 42 to 52 weeks of JRA confinement.

The Court of Appeals affirmed B.O.J.'s manifest injustice disposition. *State v. Jones*, No. 76258-3-I (Wash. Ct. App. Jan. 22, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/762583.pdf. We granted review.

5

## II. ANALYSIS

A.  Whether a juvenile offender's need for treatment is an appropriate basis for imposing a manifest injustice disposition is a matter of continuing and substantial public interest

B.O.J. concedes that her appeal is moot. Because she has served her full disposition and is no longer a juvenile, we can no longer provide effective relief. *Cf. State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983). But she argues that she raises issues of substantial public interest that warrant our review.

"It is a general rule that, where only moot questions or abstract propositions are involved, . . . the appeal . . . should be dismissed." *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). Nevertheless, we may decide a moot case if it involves "matters of continuing and substantial public interest." *Id.*

> We consider the following criteria in determining whether or not a sufficient public interest is involved:
> (1) the public or private nature of the question presented;
> (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur.

*In re Det. of Swanson*, 115 Wn.2d 21, 24-25, 793 P.2d 962, 804 P.2d 1 (1990) (quoting *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984)); *see also Nat'l Elec. Contractors Ass'n v. Seattle Sch. Dist. No. 1*, 66 Wn.2d 14, 20, 400 P.2d 778 (1965). "A fourth factor may also play a role: 'the level of genuine adverseness and the quality of advocacy of the issues'." *Westerman v. Cary*, 125 Wn.2d 277, 286, 885 P.2d 827, 892 P.2d 1067 (1994) (quoting *Hart v. Dep't of Soc.*

6

& *Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988)). "In addition, we consider the likelihood that the issue will never be decided by a court due to the short-lived nature of the case." *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 712, 911 P.2d 389 (1996).

B.O.J. contends that the need for substance abuse and mental health treatment is not an appropriate basis for imposing a manifest injustice disposition under the Juvenile Justice Act of 1977 (the Act), chapter 13.40 RCW. While B.O.J.'s particular treatment needs are private, "the need to clarify [a] statutory scheme . . . is a matter of continuing and substantial public interest." *Dunner*, 100 Wn.2d at 838. Moreover, by citing other pending motions for discretionary review, B.O.J. convincingly argues that this issue is likely to recur. And because of the relatively short length of most juvenile offender dispositions, this court rarely has the opportunity to consider them before they become moot. We thus conclude that whether the need for treatment may support a juvenile court's manifest injustice finding is a matter of continuing and substantial public interest that merits our review.

B.O.J. also asserts that the prosecution breached its plea agreement by recommending a manifest injustice disposition. That allegation is tied up in the unique facts of this case. She has not shown that the issue presents a public question

7

or that it is likely to recur.[2] Conscious of the fact that overuse of the public interest exception would "threaten[] to swallow the basic rule" of not resolving moot questions, we decline to reach this issue. *Hart*, 111 Wn.2d at 450.

## B. Need for treatment is typically not an appropriate basis for imposing a manifest injustice disposition

### 1. *Standard of review*

We typically review a manifest injustice disposition for manifest abuse of discretion,[3] asking whether "the reasons supplied by the disposition judge are supported by the record which was before the judge," whether "those reasons clearly and convincingly support the conclusion that a disposition within the range would constitute a manifest injustice," and whether "the sentence imposed was neither clearly excessive nor clearly too lenient." *State v. M.L.*, 134 Wn.2d 657, 660, 952 P.2d 187 (1998); RCW 13.40.230(2). "Once a juvenile court has concluded that a disposition within the standard range would effectuate a manifest injustice, the court is vested with broad discretion in determining the appropriate sentence to impose." *M.L.*, 134 Wn.2d at 660. If a trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis, it necessarily abuses its

---

[2] To the contrary, B.O.J.'s counsel conceded at oral argument that this issue is unlikely to recur. Wash. Supreme Court oral argument, *State v. B.O.J.*, No. 95542-5 (Mar. 12, 2019), at 8 min., 36 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

[3] *State v. Sledge*, 133 Wn.2d 828, 844, 947 P.2d 1199 (1997).

discretion. *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007); *State v. Kinneman*, 155 Wn.2d 272, 289, 119 P.3d 350 (2005).

This case also involves a question of statutory interpretation: whether the need for treatment is an appropriate basis for imposing a manifest injustice disposition under the Act. "Statutory interpretation 'is a question of law reviewed de novo.'" *BNSF Ry. Co. v. Clark*, 192 Wn.2d 832, 837, 434 P.3d 50 (2019) (quoting *State v. James-Buhl*, 190 Wn.2d 470, 474, 415 P.3d 234 (2018)). "The goal of statutory interpretation is to discern and implement the legislature's intent." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). To discern legislative intent, we look first to the statute's plain language. *Id.* If the plain language is unambiguous, our inquiry is at an end. *Id.* Where the plain language admits of more than one reasonable interpretation, it is ambiguous. *Id.* We may then look to legislative history as a further indication of legislative intent. *Id.* at 110-11. "'The ordinary use of words at the time when used, and the meaning adopted at that time, is usually the best guide for ascertaining legislative intent.'" *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 596, 278 P.3d 157 (2012) (quoting *Bloomer v. Todd*, 3 Wash. Terr. 599, 615, 19 P. 135 (1888)).

2. *The statutory scheme*

The Act states that "[i]f the court concludes . . . that disposition within the standard range would effectuate a manifest injustice the court shall impose a

disposition outside the standard range . . . . The court's finding of manifest injustice shall be supported by clear and convincing evidence." RCW 13.40.160(2).

This statutory scheme is most naturally read as imposing a two-part procedure on the juvenile sentencing court. First, the court must "conclude[] . . . that disposition within the standard range would effectuate a manifest injustice." *Id.* Then, having made this threshold determination, the court determines what particular length and form of manifest injustice disposition is appropriate. This reading is indicated by the conditional form of RCW 13.40.160(2): "*If* the court concludes . . . that disposition within the standard range would effectuate a manifest injustice the court shall impose a disposition outside the standard range." (Emphasis added.)

The court's threshold determination that a standard range disposition would effectuate a manifest injustice is guided by the statutory definition of "manifest injustice." In the case of a manifest injustice disposition that exceeds the standard range, the court must find, as a threshold matter, that a standard range disposition "would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(19) (defining "manifest injustice").

Chapter 13.40 RCW expressly lists 13 "equally important purposes." RCW 13.40.010(2). Some of the statutorily enumerated purposes will be relevant to this determination (e.g., "[p]rotect the citizenry from criminal behavior," RCW

10

13.40.010(2)(a)), while others will not (e.g., "[d]evelop effective standards and goals for the operation, funding, and evaluation of all components of the juvenile justice system and related services at the state and local levels," RCW 13.40.010(2)(j)). Under the plain language of the Act, only to the extent that they suggest that "a serious, and clear danger to society" are the statutorily enumerated purposes relevant to the threshold manifest injustice determination. RCW 13.40.020(19).

At the disposition hearing, the trial court is required to consider statutorily enumerated mitigating and aggravating factors. RCW 13.40.150(3)(h), (i). *But see State v. Rhodes*, 92 Wn.2d 755, 759, 600 P.2d 1264 (1979), *overruled on other grounds by State v. Baldwin*, 150 Wn.2d 448, 78 P.3d 1005 (2003), *and abrogated on other grounds by State v. T.J.S.-M.*, 193 Wn.2d 450, 441 P.3d 1181 (2019) ("[T]he court is not limited to consideration of" the statutorily enumerated factors.). Aggravating and mitigating factors may be relevant to both the threshold determination that a standard disposition would effectuate a manifest injustice and the court's subsequent determination of what particular form (i.e., confinement or community supervision) and length of manifest injustice determination is appropriate. For example, the fact that the juvenile's "conduct neither caused nor threatened serious bodily injury"[4]—or, conversely, that "[t]he offense was

---

[4] RCW 13.40.150(3)(h)(i) (mitigating factor).

11

committed in an especially heinous, cruel, or depraved manner"[5]—speaks both to whether a standard range disposition would "impose a serious, and clear danger to society"[6] and to what precise form and length of disposition is appropriate.

The trial court articulated two independent reasons supporting its decision to impose a manifest injustice disposition. We consider each in turn.

3. *B.O.J.'s need for treatment does not support a finding of manifest injustice*

First, the trial court found that a standard range disposition "would not allow sufficient time for [B.O.J.] to complete the services she needs, nor would she engage with such services in the community." CP at 41 (FFCL para. 20). We hold that this was not an appropriate basis for imposing a manifest injustice disposition.

To impose a manifest injustice disposition, the trial court must find that the standard range "would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(19), .160(2). In this case, the trial judge found that the standard range would effectuate a manifest injustice in part because of the seriousness of the substance abuse and mental health treatment services that B.O.J. needed, and because of the length of time that the State believed B.O.J. would need to complete those services.

---

[5] RCW 13.40.150(3)(i)(ii) (aggravating factor).
[6] RCW 13.40.020(19) (defining "manifest injustice").

But a juvenile's need for such services typically does not impose a serious, and clear danger to society, and there is no indication that B.O.J.'s particular needs did so either. The record does not indicate, for example, that the State sought mental health treatment services to prevent B.O.J. from harming other members of society. Instead, the record indicates that B.O.J. would benefit from counseling to address the substantial trauma of her unstable home life and experiences as a transient youth. And the record fails to indicate that her history of alcohol and marijuana use, while personally harmful, imposed a serious, and clear danger to society.

The State argues that since "[p]rovid[ing] necessary treatment, supervision, and custody for juvenile offenders" is one of "equally important" statutorily enumerated purposes of the Act, RCW 13.40.010(2)(g), the trial court's finding that B.O.J. had treatment needs supported its conclusion that the standard range "would impose a serious, and clear danger to society *in light of the purposes of this chapter.*" RCW 13.40.020(19) (emphasis added). But "in light of the purposes of this chapter" modifies "would impose a serious, and clear danger to society"—not the other way around. As discussed above, the Act's purposes are relevant to the trial court's threshold manifest injustice finding only to the extent that they speak to "a serious, and clear danger to society." *Id.*[7] Of course, once the trial court has made its

_____

[7] Alternatively, the State proposes that B.O.J. is herself included as a member of "society" for the purposes of RCW 13.40.020(19). Hence, the fact that a standard range would impose a serious, and clear danger to B.O.J. *herself*, by denying her access to necessary treatment, is

13

threshold manifest injustice finding, the Act's purpose of providing necessary treatment is relevant to the length and form of the particular disposition imposed. The Act "does not set up a rigidly punitive system," and it is incumbent on the juvenile justice system to help its youthful offenders. *State v. Rice*, 98 Wn.2d 384, 391, 655 P.2d 1145 (1982). But the need for treatment is typically not relevant to the trial court's manifest injustice finding because it typically does not implicate a serious, and clear danger to society.

B.O.J. and amici argue that extended confinement of B.O.J. in a manifest injustice disposition at best failed to mitigate any serious and clear danger to society posed by her standard length sentence, and at worst increased such danger. For support, they cite empirical studies suggesting that increased incarceration terms for juveniles either fail to reduce or actually increase recidivism. Most notable is a 2016 peer reviewed study of Washington youths committed to JRA facilities that "failed to find a relationship between length of stay and felony recidivism occurring within one year of release." Sarah Cusworth Walker & Asia Sarah Bishop, *Length of Stay, Therapeutic Change, and Recidivism for Incarcerated Juvenile Offenders*, 55 J. OF OFFENDER REHABILITATION 355, 371 (2016). The study found that "[t]he recidivism rate among ... five lengths of stay levels stayed consistent with a slight,

---

sufficient to support the trial court's manifest injustice finding. Such a reading would swallow the rule set forth in RCW 13.40.020(19) and .160(2), and we reject it.

14

nonsignificant, dip for stays lasting 9-11 months," which the authors suggested "adds to a growing body of literature also failing to find any empirical support for the relationship between longer custodial sentences and reduced future offending." *Id.* In essence, B.O.J. and amici argue that the trial court's disposition decision in this case, while a well-intentioned effort to help B.O.J. get access to substance abuse, mental health, and education services, is statistically likely to backfire.

We base our holding on the plain, unambiguous language of the statute, not on the basis of empirical studies. Nonetheless, we do not make decisions in a vacuum, and the studies cited by B.O.J. and amici offer a cautionary tale against imposing lengthy sentences over standard range dispositions with the hope of improving outcomes for juvenile defendants. We note that juvenile trial courts may appropriately consider such studies when relevant and material, and may rely on them to the extent of their probative value. RCW 13.40.150(1) ("In disposition hearings all relevant and material evidence . . . may be received by the court and may be relied upon to the extent of its probative value.").

The plain, unambiguous language of the Act states that "a serious, and clear danger to society" is the sole basis for an adjustment upward from a standard range disposition. RCW 13.40.020(19), .160(2). The Act's purpose of "[p]rovid[ing] necessary treatment"[8] to juvenile offenders will generally be relevant only to the trial

---

[8] RCW 13.40.010(2)(g).

15

court's determination of what form and length of manifest injustice disposition to impose—not to the threshold determination of whether a manifest injustice disposition is appropriate. Because nothing indicated that B.O.J.'s need for treatment posed a serious, and clear danger to society, her need for treatment was not an appropriate basis for imposing a manifest injustice disposition.

4. *Overleniency of the standard range can support a manifest injustice disposition, but the trial court in this case relied almost exclusively on B.O.J.'s treatment needs*

As a second independent reason for imposing a manifest injustice disposition, the trial court found that a standard range disposition "would be too lenient in light of [B.O.J.]'s uncharged criminal conduct, dismissed charges, and failures to comply with court orders." CP at 41 (FFCL para. 21).

As a general rule, leniency of the standard range is an appropriate basis for imposing a manifest injustice disposition above the standard range. At the disposition hearing, the trial court is statutorily required to consider the existence or absence of certain mitigating and aggravating factors. RCW 13.40.150(3)(h), (i). Aggravating factors include whether "[t]here are other complaints which have resulted in diversion or a finding or plea of guilty but which are not included as criminal history," and whether "[t]he standard range disposition is clearly too lenient considering the seriousness of the juvenile's prior adjudications." RCW 13.40.150(i)(vii), (viii). Not only are these listed as aggravating factors, but they are

16

also more obviously relevant to whether the standard range would impose a serious, and clear danger to society than is the need for treatment and they may support a trial court's manifest injustice finding.

The particular facts of this record fail to convince us that the trial court would have imposed a manifest injustice disposition in the absence of B.O.J.'s treatment needs. To be sure, the trial court expressly found that "either" B.O.J.'s treatment needs or the leniency of the standard range, "standing alone, would be sufficient for the Court to impose the [manifest injustice up] in this case." CP at 41 (FFCL para. 22). But this bare conclusion is belied by the trial court's oral and written findings and conclusions.

In the disposition hearing, the trial court focused almost exclusively on B.O.J.'s treatment needs as the basis for imposing a manifest injustice disposition. The court did find that the standard range disposition was too lenient, referencing the JPC report without elaboration, but immediately downplayed the significance of that finding to its decision, stating, "And I guess—let me back up—not so much the seriousness of her adjudications, but the seriousness of the services that she needs in order to have success." VRP at 30.

After introducing the JPC report into the trial record and sealing it, the trial court continued with an extended description of B.O.J.'s treatment needs and unrealized potential. The court agreed with B.O.J.'s attorney

that there's no evidence out there that the juvenile justice system . . . is in a position to get [B.O.J.] what she wants and to help her in a unilateral way. But her being on the street, . . . her trying to find a place to live without any drug treatment and without any help from anyone . . . is going to result in worse.

And I hate to be patronizing, and I hate to be the judge who thinks that they can fix everything, . . . but if I'm given two choices, one being her on the street and hoping for the best, and one being her in a place where she's stable and has access to treatment, . . . then maybe some of that potential gets used in a positive way.

*Id.* at 34. The court then exhorted B.O.J. to avail herself of the treatment opportunities in JRA confinement and found "that local sanctions are a manifest injustice given the needs that [B.O.J.] has." *Id.* at 35. The court also noted lack of violence as a mitigating factor but concluded that "the services that [B.O.J.] needs far outweigh—let me back up—the aggravating factors in this case far outweigh that mitigating factor." *Id.* at 36.

Similarly, the trial court's written findings and conclusions undercut any inference that it found the leniency aggravator to be a sufficient basis, *standing alone*, for imposing a manifest injustice disposition. For example, the trial court found that B.O.J. "violated probation or pretrial supervision" and "failed to appear for mandatory court hearings." CP at 41 (FFCL paras. 9-10). But in each case, the court found that "this makes it impossible to provide [B.O.J.] with services while she remains on probation or supervision." *Id.* (FFCL paras. 9-10).

All of this leaves the indelible impression that the trial court's finding of manifest injustice was motivated almost exclusively by B.O.J.'s treatment needs.

18

But under the Act, B.O.J.'s treatment needs were not an appropriate basis for imposing a manifest injustice disposition. The trial court thus based its manifest injustice finding on an erroneous view of the law. "If [a] trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion." *Dix*, 160 Wn.2d at 833. We therefore hold that the trial court abused its discretion in imposing a manifest injustice disposition.

Were this case not moot, we would remand to the trial court for a new disposition hearing. On remand, the trial court would remain free to impose a manifest injustice based on appropriate factors (inter alia, the fact that the standard range would be too lenient)—provided that it found by clear and convincing evidence, and entered reasons for its finding, that a disposition outside the standard range would effectuate a manifest injustice. RCW 13.40.160(2); *T.J.S.-M.*, 193 Wn.2d at 458-62. But because the case is now moot, we are unable to provide this remedy and must simply issue our decision.

## III. CONCLUSION

The trial court abused its discretion in basing its manifest injustice finding on B.O.J.'s need for substance abuse and mental health treatment. A juvenile does not usually pose a serious, and clear danger to society merely because they need treatment. Accordingly, the Act's purpose of "[p]rovid[ing] necessary treatment"[9] to

---

[9] RCW 13.40.010(2)(g).

19

juvenile offenders is typically relevant only to the trial court's determination of what form and length of manifest injustice disposition to impose—not to the threshold determination of whether a manifest injustice disposition is appropriate. We reverse the Court of Appeals.

B.O.J.'s claim that the prosecution breached its plea agreement is not a matter of continuing and substantial public interest, and we decline to review it.

Fairhurst, C.J.

WE CONCUR:

Wiggins, J.

González, J.

Geo. McCld, J.

Yu, J.

21

No. 95542-5

GONZÁLEZ, J. (concurring)—I concur with the majority that the need for treatment is not an appropriate basis for a manifest injustice disposition. The need for treatment should be a mitigator, not an aggravator. I would also hold that the misguided belief that incarceration is good for children may not be the basis for a manifest injustice disposition. Incarceration harms children.[1]

I write separately to express my concerns with the juvenile probation counselor's report. The report contained many problematic statements. Among these statements are descriptions of B.O.J. as "liv[ing] a gangster lifestyle" and being "addicted to a life of crime." Manifest Injustice Dispositional Report to Court at 3 (sealed); *see* BARRY C. FELD, THE EVOLUTION OF THE JUVENILE COURT 100 (2017) ("Code words are symbols or phrases that implicate racial themes but without directly challenging egalitarian ideals."). B.O.J. objected to the report's

---

[1] "Incarcerating children for minor crimes leads to increased delinquency and other negative consequences. They experience higher levels of substance abuse, difficulty in school, violence, and difficulty adjusting throughout adulthood." Pet'r's Suppl. Br. at 7-8 (citations omitted) (citing James Snyder et al., *Peer Deviancy Training and Peer Coercion: Dual Processes Associated with Early-Onset Conduct Problems*, 79 CHILD DEV., 252 (2008); BARRY HOLMAN & JASON ZIEDENBERG, JUSTICE POLICY INSTITUTE, THE DANGERS OF DETENTION: THE IMPACT OF INCARCERATING YOUTH IN DETENTION AND OTHER SECURE FACILITIES (2011) at 6).

1

unfounded characterizations, which were used to recommend a manifest injustice disposition. The trial court followed the report's recommendation.

There is considerable evidence that bias results in harsher dispositions for children of color, and for girls of color in particular. *See* Amici Curiae Br. of TeamChild & Mockingbird Soc'y at 19 & n.42 (citing Wendy S. Heipt, *Courts Igniting Change: Girls' Court: A Gender Responsive Juvenile Court Alternative*, 13 SEATTLE J. SOC. JUST. 803, 816 (2015)).[2] And, in my view, "bias 'found its way into the final judgment'" and the trial court's reliance on the report appears to "cast doubt on the trial court's entire ruling." *In re Marriage of Black*, 188 Wn.2d 114, 135, 137, 392 P.3d 1041 (2017) (quoting *Jacoby v. Jacoby*, 763 So.2d 410, 414 (Fla. 2000)).

With these observations, I concur.

---

[2] The problem of bias adversely influencing a manifest injustice disposition is not at all unique to B.O.J. *See, e.g.*, George S. Bridges & Sara Steen, *Racial Disparities in Official Assessments of Juvenile Offenders: Attributional Stereotypes as Mediating Mechanisms*, 63 AM. SOC. REV. 554 (1998) [https://perma.cc/J6RJ-J4BV]; Michael J. Leiber & Jennifer H. Peck, *Race in Juvenile Justice and Sentencing Policy: An Overview of Research and Policy Recommendations*, 31 LAW & INEQ. 331 (2013) [https://perma.cc/X6HS-SAT9]; Emily Gaarder, Nancy Rodriguez & Marjorie S. Zatz, *Criers, Liars, and Manipulators: Probation Officers' Views of Girls*, 21 JUST. Q. 547 (2004); *cf. State v. Sledge*, 133 Wn.2d 828, 843 n.7, 947 P.2d 1199 (1997).

González, J.

No. 95542-5

MADSEN, J. (dissenting)—In this juvenile disposition, the trial court found that either B.O.J.'s treatment needs or the leniency of the standard range, standing alone, provided a sufficient basis for a manifest injustice disposition. Clerk's Papers (CP) at 41. The majority acknowledges but dismisses this express, written finding on the basis that it is seemingly insincere. Majority at 17. The appropriate inquiry, however, is whether the trial court abused its discretion in making the noted determination. In my view, it did not. Here, the court's concern for the legitimate treatment needs of this juvenile were inextricably entwined with her criminal record, her ongoing criminal behavior, her failure to comply with court orders, the community's safety, and B.O.J.'s personal safety. The majority's approach undermines the very purpose of the Juvenile Justice Act of 1977 (JJA), ch. 13.40 RCW, to help juveniles while simultaneously protecting society. Accordingly, I dissent.

Specifically, the majority concludes that the trial court misapplied the law and thus abused its discretion in making its manifest injustice disposition determination. I believe it is the majority that is misapplying well-settled law. B.O.J. pleaded guilty to two counts

of third degree theft for shoplifting items, including five bottles of liquor, from a supermarket. Instead of the 60 day standard range sentence, the juvenile court imposed a manifest injustice sentence of 42 to 52 weeks, relying on the sealed juvenile probation counselor's presentence report, other documentation, and the electronic records of the juvenile's extensive criminal history. The report, in part, noted the juvenile was a chronic runaway,[1] who lived a transient lifestyle, had been involved in assaults, is violent, uses drugs and alcohol, and associates with gang members.[2] Manifest Injustice Dispositional Report to Court (Report) at 3. The report also noted that the juvenile's criminal history was lengthy and escalating (22 criminal referrals, some as felonies), that she is not concerned about the impact of her actions on her victims, that she has not changed her behavior in 3 years, and that she has never exhibited concern or remorse for her victims; the report concluded that a standard range sentence was inadequate to protect the community against further offenses and recommended 52 to 65 weeks in juvenile detention. As noted, the juvenile court imposed a manifest injustice disposition of 42 to 52 weeks.

---

[1] I agree with the concurrence that excessive incarceration harms children. However, the manifest injustice sentence here actually provides B.O.J. with an opportunity for treatment, which she and counsel agree B.O.J. critically needs.

[2] The report states that the juvenile indicates she shoplifts when she feels hungry and she steals hard liquor for resale on the street to support herself. Manifest Injustice Dispositional Report to Court at 4. The juvenile is "a Ward of the State that has never complied with her treatment plans or stayed in DCFS [(Division of Children and Family Services)] placements;" she "runs [away] whenever she is released from detention." Id. at 3. Noting that the juvenile has "22 police referrals, 31 criminal warrants, 20 DCFS warrants, 7 guilty pleas and 5 modifications" and that "[B.O.J.] has been screened into detention 32 times," the report concludes that the juvenile "is not amenable to . . . community supervision at this moment." Id.

B.O.J. contends that the evidence supporting the manifest injustice disposition was inadequate. A finding of manifest injustice will be upheld if substantial evidence supports the reasons given, those reasons clearly and convincingly support the disposition, and the disposition is not too excessive or too lenient. RCW 13.40.230(2); *State v. J.V.*, 132 Wn. App. 533, 540, 132 P.3d 1116 (2006). A reviewing court can affirm a manifest injustice finding if one or more of the factors supported by the record clearly and convincingly support the disposition and we can determine that the trial court would have entered the same sentence on the basis of the remaining valid aggravating factors. *State v. S.H.*, 75 Wn. App. 1, 12, 877 P.2d 205 (1994).

Here, the juvenile court found substantial and compelling reasons for imposing a manifest injustice disposition, determining in part that B.O.J.'s significant substance abuse and welfare needs would require more treatment and counseling than could be accomplished with local sanctions and that this was a basis for departing upward from the standard range. CP at 41. The record supports this. The report notes B.O.J.'s "need for a structured setting . . . where she can receive consistent treatment without interruption," including drug and alcohol treatment and mental health treatment. Report at 11; *see S.H.*, 75 Wn. App. at 11-12 (a high risk to reoffend and the need for treatment are valid grounds for a manifest injustice disposition), 22 (affirming the manifest injustice disposition, but remanding for imposition of a 208-week disposition commensurate with the social worker's recommendation of 4 years of treatment); *cf. State v. P*, 37 Wn. App. 773, 778-79, 686 P.2d 488 (1984) (where the need for treatment is the sole basis for the

3

manifest injustice disposition, the length of sentence cannot exceed the available treatment).[3]

The juvenile court also determined that B.O.J. had a significant criminal history, as well as continuing criminal conduct similar to the current offense that was dismissed; in addition she continued to offend while cases were pending and failed to comply with court orders. In light of these circumstances, and the fact that B.O.J. was highly unlikely to comply with voluntary treatment or probationary options, the court believed the standard range was too lenient, warranting a departure upward from the standard range. As noted, the court expressly determined that any of these reasons, standing alone, was sufficient to justify the length of the disposition imposed. CP at 42. The record supports the manifest injustice determination. *See State v. T.E.H.*, 91 Wn. App. 908, 917-18, 960 P.2d 441 (1998) (a high risk that a juvenile will reoffend is a valid ground for a manifest injustice disposition).

Once a court determines that a disposition within the standard range would effectuate a manifest injustice, a trial court is vested with broad discretion in determining what sentence to impose. A disposition will be reversed only if the sentence imposed is so clearly excessive as to constitute an abuse of discretion. RCW 13.40.230(2)(b); *State*

---

[3] *See also State v. Sledge*, 133 Wn.2d 828, 947 P.2d 1199 (1997). There, this court acknowledged that "the Juvenile Justice Act retains treatment, in addition to punishment, as one of its express goals." *Id.* at 844 n.8. This court held that "*with no specific juvenile treatment program requiring a specific duration to complete*, a trial judge may not take into consideration the possibility of early release in imposing an exceptional disposition, as the entitlement to such release is entirely too speculative." *Id.* at 846 (emphasis added). The highlighted proviso indicates this court's acknowledgement that the need for treatment and its completion is a valid basis for imposing an exceptional sentence of sufficient length to facilitate treatment needs.

4

*v. Melton*, 63 Wn. App. 63, 70, 817 P.2d 413 (1991); *State v. Sledge*, 133 Wn.2d 828, 844, 947 P.2d 1199 (1997) (trial court's determination is reviewed for manifest abuse of discretion). Here, the juvenile court's imposition of a 42 to 52 week manifest injustice disposition was not an abuse of discretion. *See State v. Taylor*, 42 Wn. App. 74, 76-77, 709 P.2d 1207 (1985) (noting that property crimes can create a clear danger to society and holding that a 65 week disposition is not clearly excessive). "'[A] sentence is excessive only when it cannot be justified by any reasonable view which may be taken of the record.'" *State v. Tauala*, 54 Wn. App. 81, 87, 771 P.2d 1188 (1989) (alteration in original) (quoting *State v. Strong*, 23 Wn. App. 789, 794-95, 599 P.2d 20 (1979)); *see also State v. Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017) (reviewing court may not find abuse of discretion simply because it would have decided the case differently; it must be convinced that no reasonable person would take the view adopted by the trial court).

Further, I disagree that this case concerns a trial judge who imposed incarceration for an improper reason. Notably, the findings and conclusions concerning the manifest injustice disposition focus on the juvenile's extensive criminal history (listing 11 convictions, including 2 assaults); the numerous times B.O.J. has run away from placement, resulting in warrants (listing 18 such occasions); the numerous probation violations, resulting in violation of court order warrants (noting 19 such occasions); and numerous instances of failure to appear for mandatory court hearings (noting 12 such occasions)—all occurring within the preceding two years and all established through

court records. *See* CP at 40. The juvenile court also noted B.O.J.'s substantial substance abuse treatment needs, which, the court noted, both B.O.J. and her counsel had admitted at many court hearings, including the sentencing hearing here. *See id.* at 41. Here, as noted, B.O.J.'s disposition was adjudicated in juvenile court, a forum expressly charged with "responding to the needs of youthful offenders." RCW 13.40.010(2). "In resolving issues that turn upon the legislative purpose of the JJA, a court should seek to effectuate 'to the fullest possible extent both the purpose of rehabilitation and the purpose of punishment.'" *State v. J.N.*, 64 Wn. App. 112, 117, 823 P.2d 1128 (1992) (quoting *State v. Rice*, 98 Wn.2d 384, 394, 655 P.2d 1145 (1982)). Noting "the juvenile system's focus on the current needs of the juvenile offender, treatment, and rehabilitation," the *J.N.* court explained that "[t]he concept of 'treatment' under the JJA is not limited to any particular form; the appropriate treatment must be determined by the specific needs of the offender in each case." *Id.* (citing *Rice*, 98 Wn.2d at 393). And particularly applicable here, the *J.N.* court noted that under the JJA, the "existence of recent criminal history is an aggravating circumstance that may support a manifest injustice disposition." *Id.* In affirming the juvenile's sentence, the *J.N.* court explained, "In imposing the manifest injustice disposition, a primary concern of the disposition court here was to respond to J.N.'s specific needs and to give the system a reasonable opportunity to address those needs." *Id.* at 118. The same is true in B.O.J.'s case. As in *J.N.*, the trial court here was "responding to the specific needs of the offender for treatment." *Id.* As in *J.N.*, there was

6

no abuse of discretion and B.O.J.'s manifest injustice disposition should likewise be affirmed.

Finally, there is simply no basis to reverse here; nor does this record provide an appropriate basis to elaborate on how the trial court should appropriately exercise its discretion. In light of the many valid justifications for imposing a manifest injustice disposition, as noted above, any second guessing by this court is objectively unwarranted in the present case. The majority's disagreement with the trial court's exercise of discretion is not a valid basis for reversal. *Salgado-Mendoza*, 189 Wn.2d at 427.

For the reasons discussed above, I dissent.

No. 95542-5
Madsen, J., dissenting

Madsen, J.

Stephen, J.

8