IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36385-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| F.B.T., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — F.B.T. appeals a manifest injustice disposition designed to keep him in the custody of the Juvenile Rehabilitation Administration (JRA) until his 18th birthday. In light of conceded error and recent case law, we remand for a new disposition hearing.

FACTS

F.B.T., 13 at the time of these incidents, lived in Goldendale with his father and his father's girlfriend. A victim of physical and sexual abuse, he previously had lived with his mother and his stepfather, and also had lived in various foster homes. He had an I.Q. between 70 and 80. He had a history of injuring himself and others and was taking medications for ADHD, depression, anxiety, and sleep disorder. He was well known to the police and the juvenile court.

Two incidents formed the basis for the charges. F.B.T. often would stay the night at the home of his classmate, P.M. While staying there one night in May or June 2018, F.B.T., P.M., and P.M.'s 11-year-old sister, R.M., were sleeping in the living room. P.M. awoke and saw F.B.T. naked, on top of R.M., touching his penis. R.M. was asleep and was naked from the waist down. The inside of his legs were touching the outside of her legs. F.B.T. had semen on his hands. RP at 95. When P.M. asked F.B.T. what he was doing, F.B.T. walked into the kitchen and returned with a knife. F.B.T. warned P.M. that if he told anyone what had happened, F.B.T. would stab him. This incident eventually resulted in charges of indecent liberties and witness intimidation.

An incident on June 23, 2018, led to a charge of first degree child molestation. On that occasion, F.B.T. was at the house with P.M., R.M., and their three-year-old neighbor J.R. F.B.T. and J.R. were sitting on the couch under a blanket. J.R. ran out from under the blanket and screamed for her mother, who was not then at the house. When her mother arrived, J.R. told her mother that F.B.T. had choked her and touched her "peepee." J.R. later said that F.B.T. had put two fingers inside her. J.R.'s mother made a report to police and took the child to a hospital for a sexual assault examination.

Goldendale Police Officer Michael Stelljes, who had multiple interactions with F.B.T. during the previous two years, picked F.B.T. up at his home and drove him to the police station for an interview; he was not handcuffed. Stelljes and Officer Mike Smith

2

conducted a recorded interview after first advising F.B.T. of his *Miranda*[1] and juvenile rights. F.B.T. responded that he understood his rights and spoke with the officers. The interview lasted from 8:03-8:52 p.m.

He told the officers that he had tried to kiss R.M., but she pushed him away. He has sexual urges whenever he sees a woman and has difficulty controlling those urges. He asked R.M. if they could have sex and she said no. Later, he pulled off R.M.'s underwear while she was asleep. He stared at her and masturbated over her while she slept. He ejaculated onto R.M.'s blanket. He touched R.M.'s breasts and vagina. When P.M. asked what was happening, F.B.T. grabbed a knife from the kitchen and told P.M. he would kill him if he told anyone what had happened. F.B.T. knew he should not have done what he did.

He told officers that he touched J.R. on her vagina through her clothing. He could not control his urge to touch her. Officer Stelljes told F.B.T. on multiple occasions that he was lying and should tell the truth. F.B.T. expressed the wish that he could go home.

After a mental health evaluation, F.B.T. was found competent and the matter eventually proceeded to bench trial in the juvenile court. The trial court reviewed the recording of the interview before concluding that F.B.T.'s statements were voluntary.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The court admitted the statements at trial and ultimately determined that F.B.T. had

committed the three charged offenses.

The juvenile court administrator prepared a report and requested a manifest

injustice determination and resulting placement with JRA until F.B.T.'s 18th birthday.

The report concluded that F.B.T.'s father could not control him, citing to 29 calls to law

enforcement by the father or the father's girlfriend. The report detailed F.B.T.'s

difficulties in controlling his behavior at home and at school and how he had become

more assaultive as he aged. He was also on diversion for multiple incidents of

misdemeanor-level behavior and was not making progress. The report noted that the

most recent competency evaluation indicated that he was developmentally delayed and

suggested that F.B.T. be evaluated for social functioning and communication deficits.

The report recommended commitment to JRA until age 18, reasoning:

> While [F.B.T.] is of a young and tender age, his behaviors and criminal offenses
> will require a lengthy set of treatment programs in order to present to us, the
> community, a young man who is productive, non-violent and ready to blend in
> with people who will no longer be afraid of him. Such treatment programs take
> time, not only to administer but to allow the participant ample time to practice the
> new skills and behaviors. The State of Washington's Juvenile Rehabilitation has
> the resources and capabilities to "reform" . . . [F.B.T.]

Clerk's Papers (CP) at 29.

Defense counsel stated that he did not "have any grounds to argue against findings

for the manifest injustice." Report of Proceedings at 226. The court found that a

standard range disposition would constitute a manifest injustice and also found that three

aggravating factors existed: (1) victim vulnerability, (2) F.B.T. had failed to comply with the terms of recent diversion agreements, and (3) his parents were incapable of controlling F.B.T. and there was a high risk of re-offense. CP at 31. The court imposed a disposition of three concurrent 206 to 232 week terms. CP at 33.

F.B.T. then appealed to this court. After the appeal was taken, but prior to appointment of appellate counsel, the court entered an order modifying the disposition by imposing consecutive terms of 70, 70 and 66-92 weeks. CP at 51. The parties and court did not seek this court's permission prior to entering the modification.

After requesting supplemental briefing, this court considered the appeal without conducting oral argument.

## ANALYSIS

This appeal presents challenges to the admission of F.B.T.'s statement to law enforcement, the modification of the disposition after appeal, and multiple arguments concerning the manifest injustice disposition. We address the challenges in the order stated, although we combine our consideration of the challenges to the disposition.

*Admission of Statement*

F.B.T. first challenges the admission of his statement to the officers, arguing that because of his youth and cognitive deficits, he did not waive his right to remain silent. The record supports the trial court's contrary conclusion.

5

"Whether a juvenile has knowingly and voluntarily waived his *Miranda* rights is determined by a 'totality-of-the-circumstances' approach." *State v. Jones*, 95 Wn.2d 616, 625, 628 P.2d 472 (1981) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197 (1979)).

> [This approach] permits–indeed, it mandates–inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Id.* (quoting *Fare*, 442 U.S. at 725). However, where a trial court has determined that a *Miranda* waiver was voluntary, we will not disturb that finding on appeal if the record reflects substantial evidence by which the court could have reached that conclusion. *State v. Ng*, 110 Wn.2d 32, 37, 750 P.2d 632 (1988).

The evidence amply supports the finding of waiver. There was no police coercion—no threats or promises—that would have made the waiver involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). He was correctly advised of his *Miranda* and juvenile rights. The audio recording demonstrated that F.B.T. understood what he was doing; there is no evidence that he was confused or misunderstood his rights or the consequences of speaking with the officers. F.B.T. had previously spoken with Officer Stelljes on multiple occasions.

All of the evidence supported the trial court's finding of voluntariness. No evidence was presented to suggest that F.B.T. did not understand what he was doing.

While that discussion answers F.B.T.'s primary challenge, he also suggests that art. I, § 9 of the Washington Constitution compels a different result. However, the Washington Supreme Court has rejected that argument on multiple occasions. *E.g.*, *State v. Earls*, 116 Wn.2d 364, 374-375, 805 P.2d 211 (1991). Needless to say, this court is bound by those decisions. *E.g.*, *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

The court properly admitted the statements into evidence. The convictions are affirmed.

*Modification of Disposition*

F.B.T. correctly notes that the trial court erred in modifying the disposition after F.B.T. filed his appeal to this court. Consecutive sentences were required by RCW 13.40.180(1). Since the original disposition order specified concurrent terms, the modification was necessary.

However, as both parties now acknowledge, the trial court lacked authority to modify the disposition as a consequence of the notice of appeal being accepted in this court. RAP 7.1, 7.2(a). Once this court accepts review, a trial court cannot modify a decision before this court unless it first receives permission to do so. RAP 7.2(e). As noted there, the trial court should first consider any timely posttrial motion and, if it

decides to change its original decision, must receive this court's permission to do so. *Id*.

Permission must be sought by motion.[2] *Id*.

This process was not followed in this case. Since we reverse the disposition on other grounds, we need not further address this argument.

*Manifest Injustice Disposition*

On multiple grounds, F.B.T. challenges the manifest injustice finding and ensuing manifest injustice disposition. We agree with some of his arguments and reverse and remand the disposition. Since the disposition order is being reversed, we summarily treat most of his remaining arguments.

A "manifest injustice" is "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(19). The State concedes that one of the three aggravating factors, the particular vulnerability of the sleeping victim of the indecent liberties count, was improper. We accept that concession for purposes of this appeal. Since the record does not indicate that the court would have imposed the same disposition based on the remaining factors, we reverse and remand for a new disposition.

---

[2] We suspect this problem arose because F.B.T. had not yet sought the appointment of counsel and had no representation in this court at the time a motion should have been brought.

We also requested supplemental briefing from the parties on the application of a recent decision, *State v. B.O.J.*, 194 Wn.2d 314, 449 P.3d 1006 (2019). Although that opinion does not require reversal of the disposition order, it certainly will inform the trial court and the parties concerning the next disposition hearing. In particular, *B.O.J.* requires there to be a basis for connecting the length of the commitment to JRA with the services the offender needs. *Id*. at 331. To that end, we note that the trial court may need more evidence[3] connecting the length of the term and F.B.T.'s treatment needs. The report from the juvenile court administrator noted the competency evaluator's suggestion that F.B.T. be evaluated for social skills and might need work in those areas in addition to sex offender treatment. The record lacks evidence concerning the need for and the anticipated length of such treatment and whether or not that treatment could be conducted concurrently with sex offender treatment or if it needed to precede it. Specific information should be presented to justify the length of the commitment.

The remaining arguments are without merit: (1) The evidence does support the remaining aggravating factors and the determination that a standard range disposition would constitute a manifest injustice, (2) the manifest injustice was not based on perceived inability to deliver necessary services in the local community, (3) a juvenile court may impose a manifest injustice disposition without jury findings. *State v. Minor*,

---

[3] Which now should be available from the JRA.

No. 36385-6-III
*State v. F.B.T.*

133 Wn. App. 636, 648, 137 P.3d 872 (2006), *rev'd on other grounds*, 162 Wn.2d 796,

174 P.3d 1162 (2008). None of these claims is meritorious.

We reverse the disposition order and remand for a new disposition hearing.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, C.J.

10