# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>     v.<br><br>O.C.-G.,<br><br>               Appellant. | No. 80237-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 2, 2020 |

MANN, A.C.J. — O.C.-G. pleaded guilty to drive-by shooting in juvenile court and stipulated to a manifest injustice disposition. O.C.-G. challenges the length of the disposition as excessive, claiming the court's community safety concerns were unfounded. Because the trial court did not abuse its discretion, we affirm.

I.

On the afternoon of September 19, 2018, O.C.-G. left Highline High School, driving several other males in a large sport utility vehicle (SUV). The SUV pulled up beside Victor Nuno, who was walking his son home from the high school. Nuno, an admitted gang member, argued with the occupants of the SUV, who were members of a rival gang. At some point during the argument, Nuno displayed gang signs and one of the passengers in the SUV shot at Nuno with a handgun. O.C.-G. leaned out of the way

to create space for the shooter. The shooter fired several shots while the SUV sat in traffic and then sped away. Although Nuno and his son were unharmed, a stray bullet entered through the window of a nearby chiropractic clinic, striking and killing Gabriella Reyes-Dominguez, the officer manager of the clinic.

The State initially charged O.C-G., who was 17 years old at the time of the offense, with murder in the second degree with a firearm enhancement—an exclusive adult offense under RCW 13.04.030(1)(e)(v). Following plea negotiations, the State agreed to reduce the charge to drive-by shooting in juvenile court due to evidentiary issues. The standard range for that offense is 129 to 260 weeks in the Juvenile Rehabilitation Administration (JRA). O.C.-G. stipulated that justice is best served by a manifest injustice disposition above the standard range. The parties also agreed to jointly recommend a manifest injustice sentence of confinement to the JRA until O.C.-G. turned 22.5 years old, followed by 18 months of supervision.[1] O.C.-G. pleaded guilty, acknowledging that the court was not bound by the agreed recommendation and may impose a sentence up to the maximum allowed by law.

Reyes-Dominguez's family was opposed to the joint recommendation, which they felt was too lenient. Several family members expressed their anguish to the court at sentencing, describing Reyes-Dominguez's death as a devastating loss to a community that "is getting ripped apart." O.C.-G. declined to exercise his right to allocution and personally expressed no remorse (though did so through counsel).[2]

---

[1] The parties acknowledged that the JRA may not follow the joint recommendation of 18 months supervision.

[2] O.C.-G. asserts he attempted to compensate Reyes-Dominguez's family before he was charged, but the record does not support this assertion.

While the probation officer described O.C.-G. as "a low-maintenance kid in terms of supervision," the court noted the JRA report referred to O.C.-G's behavior issues in pretrial detention, including threats to "shank and slit the throat of anyone out of frustration for not getting moved," and flooding his room. The court also noted O.C.-G.'s past offenses involving firearms, including an unlawful possession of firearm charge where a child was on the receiving end of the shooting, though was not hit.[3] O.C.-G. received a deferred disposition for that offense but pleaded guilty to committing the same charge a year later. This time, O.C.-G. was part of a group defacing a wall with graffiti; police recovered five guns from the group and O.C.-G. admitted he carried a gun due to his gang membership.

The court found the parties' stipulation to a manifest injustice sentence justified an exceptional sentence, but declined to impose the agreed recommended length of the sentence. Instead, the court imposed confinement to the JRA until O.C.-G. turned 24 years old with 12 months of supervision, citing "the Court's particular concerns about safety." O.C.-G. appeals the sentence.

II.

O.C.-G. does not challenge the court's imposition of a manifest injustice disposition to which he stipulated. Rather, he challenges the length of the sentence as excessive, claiming the trial court erred by ignoring the agreed recommendation and there was no evidence establishing that a longer sentence was necessary to protect the community. He further contends the legislature's designation of drive-by shooting as an

---

[3] The court referred to these facts at sentencing and indicated it reviewed information the State provided relating to O.C.-G.'s prior juvenile dispositions for unlawful possession of firearms, though the underlying criminal documents are not part of the appellate record.

3

A++ offense is racially biased and "acted as another incentive to impose an excessive sentence."

We review a manifest injustice disposition in a juvenile case for manifest abuse of discretion. State v. B.O.J., 194 Wn.2d 314, 322, 449 P.3d 1006 (2019); RCW 13.40.230(2)). "Once a juvenile court has concluded that a disposition within the standard range would effectuate a manifest injustice, the court is vested with broad discretion in determining the appropriate sentence to impose." B.O.J., 194 Wn.2d at 322. A manifest injustice disposition is excessive only when the disposition cannot be justified by any reasonable view taken from the record. State v. M.L., 134 Wn.2d 657, 661, 952 P.2d 187 (1998). The trial court has discretion whether to accept or reject recommendations about an appropriate term of incarceration. State v. Tauala, 54 Wn. App. 81, 87, 771 P.2d 1188 (1989) (affirming disposition of over four years' commitment despite parole officer's concern that a commitment of more than two years would harm the juvenile offender).

O.C.-G. fails to show the trial court abused its discretion. A court's focus on punishment in order to adequately protect society is an acceptable purpose for incarceration under the Juvenile Justice Act (JJA). RCW 13.40.010(2)(a); Tauala, 54 Wn. App. at 87-88 (affirming lengthy sentence based on aggravated nature of the offense and danger juvenile posed to society as evidenced by his criminal history). This is precisely what occurred here. As the court explained:

> The conduct that [O.C.-G.] engaged in, sir, it destroyed a life, it destroyed a family, it destroyed a community. And your conduct, which you have admitted to, was gasoline to the fire, this event. Meaning it wouldn't have happened without you. You were the [driver], as you said in your statement, you moved aside when the shooting occurred so that the

shooter could have a clear shot. This is the second instance as I have looked at the prior unlawful possession of a firearm case where a child has been involved on the receiving end of the shooting. That was the case in the first case that was a deferred disposition and it was the case here. That child wasn't hit but Ms. Reyes-Dominguez lost her life because of it.

The record supports the trial court's concerns for community safety. As the court noted, O.C.-G. admitted he "lean[ed] out of the way to create space for the shooter," and evidence of O.C.-G.'s present conduct shows he continues to pose a risk to others:

I have to say I've been looking through the detention and the adjustment segment of the JRA report, and I am trying to reconcile those two. I mean, on May 28th he threatens to shank and slit the throat of anyone out of frustration for not getting moved. The next day he's flooding his dorm room, covering his windows. This is replete with . . . him [not] being able to comport himself.

The court also considered his past involvement with firearms as "concerning" to community safety:

I've read the materials about the JRA Disposition Report regarding [O.C.-G.'s] conduct while in JRA and — and that is concerning. It's concerning as I look at community safety that this was not the first incident involving a firearm that he's been involved with, that he was given an opportunity in the past to try to change or get on a better path and that did not happen. In that earlier case no one died and thank goodness for that.

Reyes-Dominguez's family members also attested to the safety threat such incidents of violence pose to the community.

O.C.-G.'s reliance on State. v. P, 37 Wn. App. 773, 686 P.2d 488 (1984), is misplaced. There, the trial court imposed a sentence of 221 weeks of confinement, exceeding the probation counselor's recommendation of 152 weeks, which was "the only evidence before [the Court] regarding an appropriate sentence." P, 37 Wn. App. at 779. It was a first time offense and the probation counselor's specific recommendation addressed the juvenile's "grave need for treatment." P, 37 Wn. App. at 778-779.

5

Because there was nothing in the record to indicate the juvenile offender needed a course of treatment beyond 152 weeks, the court held the disposition was excessive and remanded for further proceedings, permitting the trial court to consider additional evidence. P, 37 Wn. App. at 779-780. But here, the joint recommendation was not the only evidence before the sentencing court. As noted above, the court considered O.C.-G.'s past offenses involving firearms, information in the JRA report about O.C.-G.'s conduct in pretrial detention, and the impact on the community.

O.C.-G. further contends that longer sentences for juveniles who commit serious offenses do not ensure community safety and weaken their ability to be rehabilitated, citing studies about potential adverse effects of juvenile incarceration. The legislature has determined that rehabilitation and community safety are "equally important purposes" of the JJA and either may support a manifest injustice disposition. RCW 13.40.010(2)(a); B.O.J., 194 Wn.2d at 324. And, as is the case here, once a court finds a manifest injustice, it has broad discretion to determine an appropriate length of the sentence. B.O.J., 194 Wn.2d at 324. As discussed above, the court did not abuse its discretion by imposing a longer term of confinement than the agreed recommendation.[4] To the extent O.C.-G. makes policy-based arguments to the contrary, these are issues better left to the legislature. Rousso v. State, 170 Wn.2d 70, 92, 239 P.3d 1083 (2010) ("It is the role of the legislature, not the judiciary to balance public policy interests and enact law.").

---

[4] The court also considered the materials O.C.-G. presented about youth, impulsivity, and judgment, noting that the State already accounted for this by charging him as a juvenile rather than an adult.

Likewise, O.C.-G.'s policy-based claims that the designation of drive-by shooting as an A++ offense is racially biased are more appropriately addressed to the legislature.[5] The legislature has determined that drive-by shooting is a serious offense that should be punished accordingly. "The courts are not in a position to agree or disagree with our legislature's balancing of public policy interests." In re Matter of Detention of J.N., 200 Wn. App. 279, 284, 402 P.3d 380 (2017). In any event, there is nothing in the record to suggest the court relied on the A++ ranking in determining the length of the sentence, as O.C.-G. claims.

We affirm the disposition.

_Mann, ACJ_

WE CONCUR:

_Appelwick, CJ_

---

[5] As the State points out, O.C.-G. cites articles that discuss racial bias in applying federal RICO statutes to street and prison gangs, but provides no data about Washington prosecutions of drive-by shootings to support a claim of disparate impact.

7